AO 106 (Rev. 04/10) Application for a Search Warrant

FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS
Jan 10, 2024
OFFICE OF THE CLERK

# UNITED STATES DISTRICT COURT
## for the
### Western District of Arkansas

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 2:24-cm-00006
LOCATION DATA CONCERNING A CELLULAR )
TELEPHONE ASSIGNED CALL NUMBER (323) )
740-7103 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A. This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

located in the _____ District of _____Colorado_____, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) | Distribution, Possession With Intent to Distribute Controlled Substances |
| 21 U.S.C. 846 | Conspiracy |

The application is based on these facts:
See Attached Affidavit of FBI SA Matthew Ferguson.

☑ Continued on the attached sheet.

☑ Delayed notice of   30   days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Matthew K. Ferguson*
Applicant's signature

FBI SA Matthew Ferguson
Printed name and title

Sworn to before me and signed in my presence.

Date: 1/10/24

*Mark E. Ford*
Judge's signature

City and state: Fort Smith, Arkansas     Hon. Mark E. Ford, U.S. Magistrate Judge
Printed name and title

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **(323) 740-7103** (the "Target Cell Phone"), whose wireless service provider is T-Mobile USA, Inc., a company headquartered at 4 Sylvan Way, Parsippany, NJ 07054.

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of T-Mobile USA, Inc. including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

**I.  Information to be Disclosed by the Provider**

All information about the location of the Target Cell Phone described in Attachment A for a period of forty-five (45) days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile USA, Inc., T-Mobile USA, Inc. is required to disclose the Location Information to the government. In addition, T-Mobile USA, Inc. must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile USA, Inc.'s services at such intervals and times directed by the government. The government shall compensate T-Mobile USA, Inc. for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

**II.  Information to Be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

---

IN THE MATTER OF THE APPLICATION
OF THE UNITED STATES OF AMERICA
FOR AUTHORIZATION TO OBTAIN LOCATION DATA
CONCERNING A CELLULAR TELEPHONE ASSIGNED
CALL NUMBER **(323) 740-7103**

**UNDER SEAL**

**AFFIDAVIT IN SUPPORT OF APPLICATION**

---

I, Matthew Ferguson, Special Agent of the Federal Bureau of Investigation ("FBI") being duly sworn, depose and state:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been employed as a Special Agent with the FBI since September 2009. Prior to my employment with the FBI, I was employed as a Police Officer and Narcotics Officer by the City of North Little Rock, Arkansas Police Department from 2004 to 2009. I am currently assigned to the FBI Little Rock Division, Fort Smith Resident Agency where I am tasked with conducting criminal enterprise investigations. During my career as a Special Agent, I have been involved in a wide variety of investigative matters, including investigations targeting criminal enterprises involved in the unlawful distribution of controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 846. During the course of these investigations, I have authored and reviewed multiple Title III wire intercept affidavits, coordinated the execution of search and arrest warrants, conducted physical surveillance, participated in controlled purchases with confidential sources, analyzed records documenting the purchase and sale of illegal drugs, and communicated with other local and federal law enforcement officers regarding the manner in which drug distributors obtain, finance, store,

manufacture, transport, and distribute their illegal drugs. Through my training and experience I have become familiar with the manners in which illegal drugs are imported, distributed, and sold, as well as the methods used by drug dealers to disguise the source and nature of their profits.

2.  I submit this affidavit in support of an application for a warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A), authorizing agents of the FBI to ascertain the physical location of a cellular telephone, including but not limited to data indicating the specific latitude and longitude of (or other precise location concerning) the cellular telephone (the "**REQUESTED INFORMATION**") [1], as described in Attachment B, for a period of 45 days. The assigned call number for the cellular telephone, as described in Attachment A, is **(323) 740-7103** (the "**TARGET DEVICE**"), a mobile cellular telephone whose service provider is T-Mobile USA, Inc. I believe the current user of this device to be **ANDRE LNU** ("**ANDRE**"). Based on investigation to date, **ANDRE** is known to Affiant as a Denver, Colorado based fentanyl trafficker who supplies large quantities of fentanyl to distributors known to ship the pills throughout the United States, including into the Western District of Arkansas. As further described below, I believe **ANDRE** is actively using the **TARGET DEVICE** in furtherance of violations of 21 U.S.C. §§ 841 and 846.

3.  I believe the **TARGET DEVICE** is being used to coordinate and direct criminal conduct taking place within the Western District of Arkansas and is in the possession of **ANDRE**. Additionally, the FBI would receive the GPS pings in the Western District of Arkansas from T-Mobile USA, Inc.. Accordingly, this court is "a court of competent jurisdiction" to issue the requested warrant under 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41, and has venue to issue the requested warrant under Federal Rule of Criminal Procedure 41(b)(4).

---

1   Such information shall, where other information is unavailable, include records reflecting the tower and antenna face ("cell site") used by the **TARGET DEVICE** at the start and end of any call.

2

4. Based on the information contained below, I submit that probable cause exists to believe **ANDRE** and other individuals, known and unknown, have committed, and continue to commit, violations of 21 U.S.C. §§ 841 and 846. Further, probable cause exists to believe the **TARGET DEVICE** is being used by **ANDRE** to commit these violations and that the **REQUESTED INFORMATION** will lead to the location of **ANDRE**, as well as other relevant evidence.

5. I am familiar with the facts and circumstances of the investigation through my personal participation, from review of information received from a cooperating defendant, discussions with other law enforcement officers, and from my review of records and reports relating to the investigation. Since I am submitting this affidavit for the limited purpose of securing a warrant authorizing the acquisition of the **REQUESTED INFORMATION**, I have not included details of every aspect of the investigation.

## USE OF CELLULAR TELEPHONES BY DRUG TRAFFICKERS

6. Based on my training, experience, and participation in other drug trafficking investigations, I know drug traffickers:

    a. Use cellular telephones to facilitate their drug trafficking activities. Such telephones contain, among other things, the names and telephone numbers of criminal associates, text messages about criminal activity, and call details about telephone numbers that were called or received by the telephone;

    b. Use cellular telephones to take photographs and videos which depict, among other things, their criminal activity, the accomplices involved in their criminal activity, and/or the possession of the fruits or instrumentalities of their criminal activity;

  c. Use cellular telephones to conduct their illegal activity by contacting sources of supply, other distributors, brokers, and buyers. Cellular telephones are often used to schedule drug transactions and/or meetings to discuss potential or future drug transactions; and

  d. Carry and maintain control of their cellular telephones at all times, including during drug transactions and during the storage of drug proceeds;

  e. Often register their telephone numbers and communications accounts in fake or alias names in order to evade law enforcement detection;

  f. Often change or "drop" telephone numbers in order to insulate themselves from their drug trafficking activities and to confuse investigators and evade law enforcement detection.

## STATEMENT OF PROBABLE CAUSE

7. Special Agents (SA) and Task Force Officers of the FBI Fort Smith Resident and Denver Field Office along with other law enforcement officers are investigating a Drug Trafficking Organization (DTO) in which **ANDRE** and others conspire to distribute large quantities of fentanyl and other illicit drugs both within the Western District of Arkansas and throughout the United States. It is known through this investigation that **ANDRE** and other individuals involved in the DTO utilize cellular telephones to communicate and coordinate their drug trafficking activities.

8. During this investigation Affiant has had the opportunity to interview a Cooperating Defendant (CD) who is cooperating with law enforcement in effort to seek sentencing consideration for pending drug-related charge in the Western District of Arkansas. CD has provided information and assistance which has proven to be truthful and which has been independently corroborated by law enforcement on multiple occasions.

9.      During one such interview, CD was questioned about a quantity of fentanyl pills which he/she was arrested in possession of in the Western District of Arkansas. CD identified his/her fentanyl pill supplier as a Hispanic male he/she only knows as **ANDRE** who lives in the Denver, Colorado area. CD provided telephone number **(323) 740-7103** (the **TARGET DEVICE**) as **ANDRE's** cellular telephone number which he utilizes to arrange meetings to provide quantities of fentanyl to CD. CD met with **ANDRE** in Denver, Colorado the day before his/her arrest in the Western District of Arkansas to obtain the large quantity of pills and arranged the meeting via a series of text messages sent/received from the **TARGET DEVICE**. CD provided Affiant and other investigators with access to his/her phone and investigators verified the information provided by CD: that he/she arranged the meeting with **ANDRE** to obtain a large quantity of fentanyl pills using the **TARGET DEVICE**. Further, Affiant and other law enforcement observed a series of text messages between CD and **ANDRE** dated August 2023 to December 2023 and determined the majority of these messages were related to the distribution of fentanyl pills and other drugs by **ANDRE** to CD.

10.     On December 20, 2023, Affiant utilized FBI administrative subpoena powers to obtain the subscriber information and toll records for the **TARGET DEVICE**. According to the responsive records, the **TARGET DEVICE** is subscribed to "Jose Martinez" with no subscriber address or other information. Toll records for the cellphone confirm consistent and continuing contact between CD and **ANDRE** on the **TARGET DEVICE**. Based on my training and experience, Affiant knows it is common for subjects involved in illicit drug trafficking and distribution activities often provide fictitious names (or no name at all) and subscriber information in order to conceal their true identity in effort to evade law enforcement detection. Affiant believes this is likely to be why the phone is subscribed to "Jose Martinez" with no further subscriber

information and, thus, believes the requested search warrant will aid investigators in fully identifying **ANDRE**.

11. On or about December 20, 2023, Affiant and another investigator met with CD. The purpose of this meeting was to have CD make a consensually monitored and recorded telephone call to **ANDRE** on the **TARGET DEVICE**. During the call, CD spoke with **ANDRE** and confirmed he/she delivered the quantity of fentanyl pills to the buyer in the Western District of Arkansas and that the buyer was pleased with the pills and would like to obtain more pills in the future. **ANDRE** acknowledged and stated he would speak with CD in a few weeks. A recording of this call is maintained by the FBI as evidence.

12. On or about January 3, 2023, Affiant again interviewed CD. During this interview, CD stated that he/she missed a telephone call from **ANDRE** using the **TARGET DEVICE** and later had a text conversation with **ANDRE** using the **TARGET DEVICE**. During this conversation, which occurred on or about January 1, 2023, **ANDRE** sent the following text message using the **TARGET DEVICE:** "How was the business?" CD replied, "Business is good. He is very happy. (smiley face emoji) he is almost ready soon. I will let you know for sure when I come back and I'm ready! Okay?"

13. CD explained **ANDRE** was referring to the fentanyl pills he supplied to CD by using coded language to discuss "the business" (meaning he was checking on the status of the fentanyl pills he supplied to CD to be delivered to the buyer in the WDAR). Further, Affiant believes **ANDRE** is ready to continue supplying large quantities of fentanyl pills to CD based on the rest of the conversation and will do so upon request of CD.

14. Based on the information detailed herein, Affiant asserts there is probable cause to believe **ANDRE** is the user of the **TARGET DEVICE** and continues to use the **TARGET**

**DEVICE** to communicate with co-conspirators, coordinate drug distribution activities and conduct ongoing criminal activities. Further, Affiant believes **ANDRE** carries the phone to locations where fentanyl supplies are stored and uses the phone to arrange drug transactions with his drug customers. Affiant asserts a GPS/precision data location search warrant will assist investigators with identifying these locations and co-conspirators in order to understand the scope of the DTO, to gain a better understanding of **ANDRE's** involvement in the DTO, to identify co-conspirators and to conduct enforcement operations which will lead to prosecution of DTO members for the federal criminal violations detailed herein.

15. In my training and experience, I have learned that T-Mobile USA, Inc. is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. [Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

16.     Based on my training and experience, I know that T-Mobile USA, Inc. can collect E-911 Phase II data about the location of the **TARGET DEVICE**, including by initiating a signal to determine the location of the **TARGET DEVICE** on T-Mobile USA, Inc.'s network or with such other reference points as may be reasonably available.

17.     Based on my training and experience, I know that T-Mobile USA, Inc. can collect cell-site data about the **TARGET DEVICE**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-Mobile USA, Inc. typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

18.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

19.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **TARGET DEVICE** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify

confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

20. I further request that the Court direct T-Mobile USA, Inc. to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile USA, Inc.. I also request that the Court direct T-Mobile USA, Inc. to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile USA, Inc.'s services at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile USA, Inc. for reasonable expenses incurred in furnishing such facilities or assistance.

21. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **TARGET DEVICE** outside of daytime hours.

22. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

*Matthew K. Ferguson*
Matthew Ferguson, Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this **10** day of January 2024.

*Mark E. Ford*
Hon. Mark E. Ford
UNITED STATES MAGISTRATE JUDGE